CarpeLaw PLLC
Robert S. Apgood, WSBA #31023
*Pro Hac Vice*
5202 223rd St. SE
Bothell, WA 98021-8075
(206)624-2379
(206)535-2930 fax

Steven M. Wells, P.C.
Steven M. Wells, Ak. Bar No. 0010066
431 W. 7th Ave., Suite 107
Anchorage, AK 99501
(907)279-3557
(907)279-3558 fax

Attorneys for the Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
AT ANCHORAGE

| | |
|---|---|
| **SUSAN AIKENS**, an individual; and **SUSAN AIKENS** d/b/a **KAVIK RIVER CAMP**,<br><br>    Plaintiffs,<br><br>    vs.<br><br>**BBC WORLDWIDE REALITY PRODUCTIONS, LLC**, a California Limited Liability Company; **BBC WORLDWIDE AMERICAS, INC.**, a Delaware Corporation; **BBC WORLDWIDE LIMITED.,** a British company; **BRITISH BROADCASTING CORPORATION**, a British company; **AARON MELLMAN**, an individual; and **JOHN DOES 1 - 10**,<br><br>    Defendants. | Case No.:<br><br>COMPLAINT<br><br>JURY DEMAND |

COMPLAINT - 1

1    Plaintiff Susan Aikens ("Aikens") brings this action for Breach of Contract, and

2    Supplemental Claims against Defendant British Broadcasting Corporation, a British

3    company ("BBC"), Defendant BBC Worldwide Limited, a British company ("BBC WW"),

4    and Defendant BBC Worldwide Americas Inc., a Delaware corporation ("BBC WWA"),

5    Defendant BBC Worldwide Reality Productions, LLC, a California limited liability

6    company ("BBC WWRP"), (collectively "Defendants"),  Defendant Aaron Mellman, an

7    individual, and John Does 1 – 10, and alleges as follows:

8                              **I.  THE PARTIES**

9        1.      Plaintiff Aikens is an individual residing in the state of Alaska.

10       2.      Defendant British Broadcasting Corporation is a British company with its

11   principal place of business in London, United Kingdom.

12       3.      Defendant BBC Worldwide Limited is a British company with its principal

13   place of business in London, United Kingdom.

14       4.      Defendant BBC Worldwide Americas, Inc. is a Delaware corporation with

15   its principal place of business in New York, NY.

16       5.      Defendant BBC Worldwide Reality Productions, LLC is a California limited

17   liability company with its principal place of business in Los Angeles, CA.

18       6.      Defendant Aaron Mellman is an individual who is believed to reside in

19   California, but which shall be better ascertained through discovery,

20       7.      Defendants John Does 1 through 10 are individuals or other legal entities

21   who are, as yet, unidentified, but shall be named when so identified.

22                        **II.  JURISDICTION AND VENUE**

23       8.      This Court has personal jurisdiction within the District of Alaska over the

24   Defendants because BBC is a British company with its principal place of business and

25   operations in London England and avails itself of the privileges and protections of this

26

COMPLAINT - 2

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

district, BBC WW is a British company with its principal place of business in London England and avails itself of the privileges and protections of this district, BBC WWA is a Delaware corporation and avails itself of the privileges and protections of this district, BBC WWRP is a California Limited liability company and avails itself of the privileges and protections of this district, Aaron Mellman is an individual who has availed himself of the privileges and protections of this district, and plaintiff is an Alaska individual residing in Alaska. 28 U.S.C. § 1332(a)(1).

9.      This Court has diversity jurisdiction over Plaintiff's claims because the parties are citizens of different states and the claims herein exceed $75,000, exclusive of attorneys' fees and costs. 28 U.S.C. § 1332.

10.      This Court has supplemental jurisdiction over any state claims pursuant to 28 U.S.C. § 1367.

11.      Venue is proper in this district because all or a substantial part of the events or omissions giving rise to the claims occurred within this district. 28 U.S.C. § 1391(a)(2).

### III. FACTUAL BACKGROUND

12.      Plaintiff Susan Aikens is an individual who resides at, owns, and operates Kavik River Camp, a camp located 197 miles north of the Arctic Circle, within the State of Alaska.

13.      Defendant BBC is a British public service broadcaster. It is headquartered at Broadcasting House in London, is the world's oldest national broadcasting organization, and is the largest broadcaster in the world by number of employees, with over 20,950 staff in total. BBC is the parent company of Defendant BBC WW.

14.      Defendant BBC WW is the main commercial arm and a wholly owned subsidiary of the British Broadcasting Corporation (BBC). The business exists to support the BBC public service mission and to maximize profits on its behalf, which it alleges to do

COMPLAINT - 3

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

through investing in, commercializing and showcasing content from the BBC around the world, in a way that is consistent with BBC standards and values.

15. Defendant BBC WWA manages media and entertainment businesses in America. The company's businesses include television programs, magazines, home entertainment, children's programming, and media. The company was incorporated in 1984 and is based in New York, New York. BBC Worldwide Americas, Inc. operates as a subsidiary of BBC Worldwide Limited.

16. Defendant BBC WWRP, upon information and belief, is a subsidiary of BBC WWA and is a motion picture and video business. BBC WWRP is the immediate party to the Participant Agreement and Accommodation and Location Agreement.

17. Defendant Aaron Mellman was, at all times relevant to this matter, an individual who was employed by, or contracted to, one or more of the BBC defendants.

18. Kavik River Camp is located at the Global Positioning Sensor ("GPS") coordinates 69.4º N, 146.54ºW and is considered to be very remote.

19. Kavik River Camp provides aircraft fuel, for-purchase meals, and for-rent accommodations to nature enthusiasts, hikers, campers, fishermen, and hunters.

20. Defendants learned of Kavik River Camp and Susan Aikens, and negotiated an agreement with her whereby they would record Sue at the camp and surrounding areas performing her day-to-day tasks, such as camp maintenance, as well as such things as fishing and hunting for food (the "Participant Agreement"). A copy of the Participant Agreement that was in effect at the time of the incident complained of herein is provided hereto as Exhibit A, and by this reference hereby fully incorporated herein.

21. One provision of the Participant Agreement states, without equivocation, Plaintiff "agree[s] to participate in all phases of production of the Series and to cooperate with Producer, as and to the extent required by Producer." That provision further provides

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

"that [Plaintiff] agree[s] that [she] will not hamper or delay the production schedule or be unwilling to cooperate or with Producer's production of the Series."

22.     The Participant Agreement does not contain a provision whereby Plaintiff can refuse to perform as directed by the producer in circumstances where Plaintiff has fears for her safety.

23.     With respect to provisons allowing Plaintiff to have rights of mutual agreement  with Defendants, the Participant Agreement provides so only in the context of the production schedule, and only to the extent that it "relates to crew safety."  It has no reciprocal provision for the safety of Plaintiff.

24.     Defendants further negotiated an agreement whereby they would receive accommodations and use of the camp (the "Accommodation and Location Agreement').  A copy of the Accommodation and Location Agreement that was in effect at the time of the incident complained of herein is provided hereto as Exhibit B, and by this reference hereby fully incorporated herein.

25.     The reality series, which airs on the Nat-Geo channel, is entitled, "Life Below Zero," with the first episode airing on May 19, 2013.

26.     The series has thus far aired eight (8) seasons with an approximate count of aired episodes numbering 87.

27.     The circumstances leading up to the incident about which Plaintiff seeks relief occurred during the filming of Season 5, Episode 11 on February 18, 2015 during the mid-day and thereafter  (aired June 18, 2015).

28.     The BBC film crew arrived at Kavik Feb 4, 2015 through Feb 8th, 2015. Weather and temps were severe enough to make arrival difficult. The crew consisted of Producer Aaron Mellman, cameraman Michael Cheeseman, an IT technician, name unknown, and AMS safety agent Jerrod Styart.

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

29.     Filming commenced approximately February 5th.  Subject matters of filming were varied and involved fixing and moving snow and other items. Long periods of time in frigid temperatures were recorded.

30.     Defendant Producer Mellman did not allow Plaintiff to wear a facemask, in spite of the temperatures dropping as low as 72 below zero wind-chill.  Defendants felt it important that the audience see Plaintiff's face.  As a result, even after requesting time away from filming and the ability to shield face, Plaintiff became frostbitten.

31.     Filming continued almost daily.  Plaintiff and Defendants did have to take a break from outdoor work due to frostbite Plaintiff suffered from working outdoors without a facemask.

32.     Plaintiff reported these circumstances to Lauren Dascher and Joseph ("Joe") Litzinger from the Episodic Development department of BBC, the producing company. BBC and NatGeo (National Geographic Society) co-own the program.  The program airs on the NatGeo channel.

33.     When Plaintiff reported these incidents to Lauren and Joe, their response was for Plaintiff to take time off from filming to heal, and they assured Plaintiff that her safety was their highest concern.

34.     Filming was postponed, but the parties returned to filming in just a few days.

35.     Scenes in the episode involved the camp generator, Bobcat equipment and overhead power lines and were filmed from arrival through Feb. 11th.

36.     Plaintiff took the 12th and 13th to recover and start healing from frostbite.

37.     Feb 14-16 were spent filming Plaintiff making snowshoes.  On Feb 17th the subject matter covered camp chores.   A camping episode was set up for Feb 18 to go to an

COMPLAINT - 6

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

area Plaintiff refers to as the Kavik Forest. However, Defendant Mellman refused to use the location, instead forcing the establishment of a camp just a few miles downriver.

38.     Defendant Mellman then also refused to participate in the camping. Rather, he stayed in camp rather than shooting as planned.

39.     Defendant Mellman also prohibited Plaintiff from taking her covered Argo, a covered and tracked vehicle, and instead forced the usage of the snow-machine and sled.

40.     Defendant Mellman further forced Plaintiff to leave her elderly and frail dog, Ermine, behind, which upset Plaintiff greatly due to the fact that the series is not supposed to be a scripted show.  This resulted in Plaintiff's old retired sled dog getting very distraught, thereby distressing Plaintiff.

41.     Defendant Mellman instructed Plaintiff to go out to the remote camp, but insisted that Plaintiff leave the dog in Kavik River Camp.  One cameraman, Michael Cheeseman, and the IT tech accompanied Plaintiff while Defendant Mellman remained in camp.

42.     The AMS safety staff stayed in camp with Defendant Mellman.

43.     Defendant Mellman did visit the remote camp and supervise the set up, but did not stay for filming.

44.     Plaintiff was setting up camp on the river, a few miles downstream from Kavik River Camp.  The following morning Plaintiff felt uncomfortable about her dog, Ermie, and her care because Plaintiff did not trust the Defendants and worried for her dog's safety and care.

45.     Plaintiff depended on Ermie, now deceased, for protection and companionship, and was uncomfortable leaving her at camp unsupervised with people back there.

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1  46. Plaintiff radioed to camp, but not receiving response, returned to camp on

2 the snow machine.

3  47. Upon arriving back at Kavik River Camp, Plaintiff discovered that Ermie

4 had not been cared for so Plaintiff let her out to relieve herself and fed her. Plaintiff asked

5 Defendant Mellman when they could return to the remote camp when she was informed

6 that Defendant Producer Mellman was not ready and was changing plans again for

7 Plaintiff's activities.

8  48. Plaintiff called Joe and Lauren again to discussed her anger and upset at

9 being commanded about what she could and could not do, what types of vehicles are better

10 for the filming sequences, all without any regard by Defendants to safety.

11  49. Plaintiff's understands, and contracted with Defendants, that the series is

12 supposed to be a documentary-style representation of Plaintiff's life and activities.  It is not

13 a scripted show wherein the film company makes the story lines up for effect.

14  50. Plaintiff felt that Defendants' conduct was not appropriate and expressed her

15 concern that she would not leave her dog behind and living alone.  Plaintiff was, in fact,

16 extremely worried about Ermie, as Ermie was crying, which might well attract predators

17 and/or be indicative of health issues.

18  51. Plaintiff had called Lauren and Joe multiple times during this time period

19 regarding the confrontational nature of Defendant Mellman.

20  52. Because of the language of the Participant Agreement, and therefore feeling

21 that she had no choice other than to do as Defendant Mellman commanded, Plaintiff

22 returned to the remote camp tent site to continue filming.  Eventually, Defendant Mellman

23 and the safety people came out to the remote site so filming could continue.  Because he

24 had not participated in the filming, Defendant Mellman reviewed what Plaintiff and the

25 camera crew had done the night before and that morning.

26

COMPLAINT - 8

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

53.     Plaintiff told Defendant Mellman that she wanted to leave the tent and sled and take her .410 shotgun to hunt ptarmigan, a mainstay staple food source for Plaintiff. There were, at that time, hundreds of those birds in the bushes in the area and it was an organic opportunity to gain meat and feathers for Plaintiff's subsistence.

54.     Defendant Mellman did not want Plaintiff to do that.  Instead, he commanded Plaintiff to dismantle the tent and strike the camp, and then travel the river and go into the overflow.

55.     "Overflow" is the term applied to water that has been forced over the top of existing ice stretches of otherwise frozen rivers and streams.  Although the river is covered with ice, flowing water still rushes beneath the ice, creating a perilous hazard.

56.     Defendant Mellman wanted to film Plaintiff traveling down the river on her snow-machine, including into overflow. He got very angry when Plaintiff was resistant to that, yelling at her.

57.     Defendant Mellman also yelled at the safety people, bellowing that they work for him, and not for Plaintiff, and that what he told them was the command that must be obeyed.

58.     Plaintiff ended up in tears and could not continue filming until she stopped crying and could be filmed without showing anxiety.

59.     About this time, Defendant Mellman noticed mist from overflow farther downriver.

60.     As a result, Plaintiff was required to do an on-the-fly ("OTF") modification to the storyline being that she was heading for/ through the overflow to collect water.

61.     Plaintiff objected because traveling on overflow is very dangerous and Alaskans avoid it at all costs under normal situations.

COMPLAINT - 9

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

62.     As Plaintiff started to take the tent down, the wind picked up and made the task difficult and dangerous because the wind was rolling the tent end over end.

63.     Plaintiff was afraid of the metal attached to the tent hitting her. As such, Plaintiff asked for help for safety reasons.

64.     Defendant Mellman yelled that no one was to go near Plaintiff, that they worked for him and not Plaintiff, and threatened that they would lose their jobs if they went to Plaintiff's aid.

65.     Soon afterward, Plaintiff was hit in the head by a metal tent support that had been blown by the high winds.

66.     This prompted another confrontation with Defendant Producer Mellman, because Plaintiff had extreme concerns about her safety in this situation and the direction the scripted scenes would take as a result of Defendant Mellman's actions and threats.

67.     Plaintiff packed everything onto the sled and attached the sled to the snow machine and was instructed by Defendant Mellman to head down the river. The plan was to do long-lens and side-by-side shots.

68.     Plaintiff was then commanded to remove her safety helmet because Defendant Mellman wanted to see her face in the ensuing footage.

69.     Plaintiff was again made to be very uncomfortable removing her snow-machine safety gear, such as the helmet, because the river with overflow and ice is dangerous.

70.     Because of how he envisioned the scene, Defendant Producer Mellman was adamant that part of the shoot would be to go through the overflow, not just next to it.

71.     Plaintiff told Defendant Mellman that she would not go through the overflow, due to it being scary and dangerous.  Rather, Plaintiff offered an alternative which would look similar. Defendant Mellman refused Plaintiff's suggestion and a

COMPLAINT - 10

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1  confrontation ensued lasting a long time wherein Plaintiff was commanded to say it was

2  her idea that she would go through the overflow at a high rate of speed in order to keep the

3  tips from being caught under collapsing ice.

4       72.    This argument was video recorded, as was everything else done that day.

5       73.    Feeling pressured, Plaintiff finally acquiesced to Mellman's demands

6  relying on his promises that if she performed as he demanded, he would leave camp and

7  terminate filming done for the episode.  Although we had too many confrontations, he

8  insisted that this NEEDED to be done.

9       74.    To ride the edge of the overflow area, and get through it, Plaintiff had to

10  increase her speed significantly in order to make it without the skis dropping into

11  collapsing ice.

12       75.    Nevertheless, Plaintiff ended up hitting glare ice, and at 60 mph, had no

13  control over the snow machine.

14       76.    Plaintiff entered into an unrecoverable side slide and hit an ice heave (an

15  accumulation of ice and snow).  The snow-machine tumbled and Plaintiff was thrown quite

16  a distance at a high rate of speed.

17       77.    When Plaintiff landed from the throw, she could not move.  She had heard

18  her bones snap, but did not know if her firearm was lodged in her spine, or if the

19  screwdriver in her pocket for fixing the sled had dislodged and embedded itself in or near

20  vital organs.

21       78.    Plaintiff finally heard someone ask her if she was okay.  She told them "no"

22  a few times, but that she had heard and felt bones break, and could not breathe well.

23       79.    Plaintiff had donned her helmet just prior to filming the scene, and needed

24  assistance to remove it.

25

26

COMPLAINT - 11

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

80. The safety person, Jarod, and crew came to where she had landed to help assess her injuries. Jarod asked her questions as he then worked to determine injuries. All of this was being filmed.

81. The entire crew was within 20 feet of the crash site.

82. A crew member (Plaintiff believes it was Jarod) called the BBC to tell them about the accident. Jonathan Paltin at BBC told them to call later, as he incorrectly assumed that this was a report of a simple nature and not the serious incident that it was.

83. A crew member (Plaintiff believes it was Jarod) called him right back to let him know it was quite serious and that Plaintiff was injured badly.

84. The Defendants decided NOT to call Life-flight, or for immediate pick up in the field with air taxi, in favor of getting additional footage.

85. During this time, Plaintiff was in extreme pain and going into shock, so asked the IT technician to please prepare something to drink for her that was hot and contained sugar.

86. Plaintiff was told by Defendants that there was only one chance to get the extreme footage of her crash at the scene and that this needed to be done.

87. Plaintiff could not stand or walk and she refused to go try to pick up the snow machine as requested, or lay down on the snow in an attempt to recreate the scene.

88. Plaintiff forced out that she knew her collarbone and possibly her arm and ribs were broken. She explained that she didn't know how her legs or spine were, or if she had experienced injuries there. Plaintiff asked where her gun and screwdriver were so she could determine if either had been lodged in her or had hit her during the roll resulting from the crash.

89. Realizing how injured Plaintiff was, the cameramen didn't want to continue shooting, fearing that the lack of proper attention might cause Plaintiff serious harm.

COMPLAINT - 12

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

90.     Plaintiff spoke with the BBC defendants, and, still thinking that her contract did not allow her to refuse the Defendants' demands, explained to them that she would do what she could, but that she was going into shock.

91.     Since most of her clothing had been cut off to aid in assessment, and it was approx 15-20 below zero, hypothermia was a concern and Plaintiff needed the rescue plane to land in the field next to her. A plane could have landed on the tundra next to the place Plaintiff was injured. The BBC said they understood how badly Plaintiff was hurt, but was insistent that Plaintiff stay out there long enough to get footage.

92.     As an opportunity to get more footage, the BBC decided to land the plane on the runway, which was six or seven miles away, instead of out on the tundra.

93.     Plaintiff could not drive a snow machine, but Defendants would not call to request the rescue airplane to land at the crash site.

94.     As a result of that refusal, Plaintiff was forced to ride behind a snow machine driver on the river the 6-7 miles back to camp, protected from the elements by only her sports bra and long johns.

95.     Due to Defendants actions and denials, Michael Cheeseman, one of the cameramen, felt compelled to film himself making a statement about how seriously Plaintiff was injured, and that he was filming at Defendants' command "under duress."

96.     Mr. Cheeseman felt strongly that Plaintiff immediately should have been medically evacuated.

97.     As a result of Defendants actions and denials, Plaintiff was forced to remain in the field for a few hours while the producer was shooting additional footage.

98.     Plaintiff's snow machine was bent and broken, but drivable, and someone else drove it to camp.

COMPLAINT - 13

**CarpeLaw PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1      99.     Plaintiff was made to ride on the back of a machine on the way back to
2  camp. This was extremely dangerous and extremely painful and traumatic.

3      100.    When the parties arrived back at camp, Plaintiff was helped from the snow
4  machine and went inside her living quarters. Her dog Ermie was extremely upset.

5      101.    Plaintiff requested that the others take care of her dog and that they get
6  Plaintiff something warm and sugary to drink, to help with her shock.

7      102.    The parties called Lauren and updated BBC on the situation.

8      103.    Plaintiff inquired as to why they did not send the rescue plane to the crash
9  site, instead forcing her ride back to camp on a snow machine.

10      104.    Lauren and Joe expressed they would have preferred the field landing as
11  well.

12      105.    When the plane arrived Kavik, Defendant Mellman made the plane land at
13  the far end of the mile-long runway because he wanted to film how much pain Plaintiff was
14  suffering, and to film Plaintiff walking injured.

15      106.    Plaintiff requested a ride on the back of snow machine to the plane, but
16  Defendant Mellman would not allow that. Rather, Defendant Mellman instructed the crew
17  that if anyone were to give Plaintiff a ride, they would be fired.

18      107.    Plaintiff was then required to unnecessarily walk one-half mile, but was
19  finally given help for a short distance to the plane.

20      108.    Plaintiff knew the pilot, and he immediately realized how injured and in
21  pain she was.

22      109.    The pilot was upset that he was not allowed to land near accident site.

23      110.    Plaintiff was very relieved to see him and even joked with him as he assisted
24  her into the back seat of the airplane.

25

26
COMPLAINT - 14

**CarpeLaw PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1      111.    Plaintiff was secured in the plane, and a cameraman was loaded into the

2   plane with her.

3      112.    Defendants secured an appointment for Plaintiff at the medical clinic in

4   Deadhorse, AK, which was not yet even fully open, but whose employees were willing to

5   do an x-ray of Plaintiff's injuries.

6      113.    Plaintiff later discovered that the Life-flight was denied by the BBC due to

7   the expense involved, so Plaintiff was forced to wait with Mr. Cheeseman until public

8   transportation could accommodate getting her to Fairbanks, AK.

9      114.    Plaintiff was required to wait some days before she was flown into

10  Fairbanks.

11     115.    During the few days that the film crew was residing in Kavik River Camp

12  for the episode, Defendant Mellman consumed six (6) gallons of Whisky and all of

13  Plaintiff's personal scotch whisky supply.

14     116.    While Defendant Mellman was consuming Whisky at Kavik River Camp, he

15  also was consuming Oxycontin.

16     117.    Plaintiff personally observed Defendant Mellman consume as many as four

17  (4) tablets of Oxycontin in conjunction with drinking Whisky.

18     118.    Defendant Mellman offered to provide Oxycontin to Plaintiff, which she

19  declined.

20     119.    As a result of the injuries, Plaintiff has suffered numerous surgeries.

21     120.    As a result of the injuries, Plaintiff experiences chronic pain in her lower

22  spine.

23     121.    As a result of the injuries, Plaintiff suffers chronic leg and arm pain.

24     122.    As a result of the injuries, Plaintiff now suffers from numerous and

25  significant scars.

26
    COMPLAINT - 15

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

123. As a result of the injuries, Plaintiff has suffered permanent disabilities that affect her ability to effectively sustain her lifestyle at Kavik River Camp and provide self defense.

124. As a result of the injuries, Plaintiff's right clavicle is not properly aligned.

125. As a result of the injuries, the tendons in Plaintiff's neck "catches," causing her pain.

126. Plaintiff is recognized by lawful authorities as a subsistence hunter.

127. As a result of the injuries, Plaintiff can no longer hold a rifle in a normal manner, which is necessary for her to be able to hunt for subsistence food stuffs.

128. As a result of not being able to hold a rifle in a normal manner, Plaintiff has had to suffer the expense of having a special firearm fabricated in order that she may hunt food for her subsistence.

129. As a result of the injuries, Plaintiff has suffered, continues to suffer, and will suffer unnecessary expenses required to assist in mitigating her losses.

130. As a result of the injuries and Plaintiff's inability to handle a rifle, Plaintiff's ability to defend herself from predators, such as bears and wolverines, and is dangerously compromised.

131. As a result of not being able to effectively defend herself, Plaintiff fears, and therefore necessarily cannot and does not venture out into the wild tundra to hunt for subsistence food stuffs.

132. Defendants used footage and materials to create a fictionalized version of the incident and aftermath that resulted in the injuries suffered by Plaintiff.

133. At all times during the filming, Plaintiff did not believe that she had any ability to control whether or not she should continue with the filming of the episode.

COMPLAINT - 16

**CarpeLaw PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1      134.    Plaintiff's Kavik River Camp is an ongoing business concern upon which

2  Plaintiff relies to maintain the terms of the land lease she has with the State of Alaska on

3  the underlying real property that is the situs of the camp.

4      135.    If Plaintiff fails to show that the ongoing business is profitable, the State of

5  Alaska can cancel the lease, thereby forcing Plaintiff out of business.

6      136.    Defendants have interjected themselves into business relationships Plaintiff

7  maintains with third parties in order to control Plaintiff's time, for the benefit of

8  Defendants' desires to film scripted episodes.

9      137.    Defendants desire that Plaintiff's companion and pet dog, "Lil Bawb," not

10 be included in the filming of footage because, they believe, the dog is not of sufficient

11 physical stature to further the image they desire of Plaintiff in the filmed episodes.

12     138.    During the filming of an OTF that was been performed in Plaintiff's

13 personal residence, Defendants objected to Lil Bawb being present in the footage.  As a

14 result, the producer of that sequence, with Plaintiff's permission, volunteered to hold Lil

15 Bawb during the filming.

16     139.    Instead of holding Lil Bawb, the producer locked Lil Bawb in one of the

17 trailers in the camp without any protective clothing or blankets.

18     140.    The trailer was not heated and did not have any operational lights.

19     141.    The temperature in the trailer was estimated to be -20 degrees.

20     142.    Plaintiff did not consent to having Lil Bawb locked in the trailer and, it was

21 only when Plaintiff heard Lil Bawb crying for help that she discovered he had been locked

22 in the trailer and subjected to potential, fatal injury.

23     143.    When negotiating the Participant Agreement with Plaintiff, Defendants were

24 attempting to contract for her services.

25

26

COMPLAINT - 17

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1    144.    Defendants offered the Participant Agreement contract to Plaintiff on the

2    terms they authored.

3    145.    Plaintiff accepted Defendants' offer as presented.

4    146.    The contract provides for consideration to be paid to Plaintiff for her

5    performance under the contract.

6    147.    Under the contract, Defendants, *inter alia*, promised to pay Plaintiff for her

7    performance.

8    148.    Under the contract, Plaintiff promised to perform the services set forth in

9    that contract.

10    149.    Plaintiff performed the services required of her under the contract.

11    150.    The consideration was paid to Plaintiff.

12    151.    Plaintiff has garnered much publicity and limelight in her operations of

13    Kavik River Camp.

14    152.    Many people visit the camp for the purpose, *inter alia*, of meeting and

15    interacting with Plaintiff.

16    153.    As a result of the injuries sustained in the crash and the need to be treated

17    medically far from the camp, Plaintiff was required to be absent from Kavik River Camp

18    for months during the short season when visitors can contract and pay for visits to the

19    camp.

20    154.    As a result of her forced absence, may people who had reserved food and

21    lodging at the camp during those periods cancelled their visits.

**IV.  CLAIMS FOR RELIEF**
**CLAIM ONE**
**BREACH OF CONTRACT**

COMPLAINT - 18

**CarpeLaw PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

155.     Plaintiff hereby repeats and realleges paragraphs 1 – 152 as though fully set forth herein.

156.     All contracts contain implied covenants of good faith and fair dealing by the parties to the contract.

157.     By making unreasonable demands on Plaintiff for her performance under the contract, Defendants breached the covenant of good faith.

158.     The Participant Agreement is a binding contract between the parties.

159.     Defendants did not perform in good faith under the contract.

160.     Due to the non-performance of Defendants to act in good faith, Defendants have breached their covenant to Plaintiff.

161.     As a result of that breach, Plaintiff has been damaged in an amount to be proved at trial.

## CLAIM TWO
## BREACH OF CONTRACT

162.     Plaintiff hereby repeats and realleges paragraphs 1 – 159 as though fully set forth herein.

163.     All contracts contain implied covenants of good faith and fair dealing by the parties to the contract.

164.     By including protective provisions in the Participant Agreement that served only the interests of Defendants and no reciprocal protections for Plaintiff, Defendants breached the covenant of fair dealing.

165.     The Participant Agreement is a binding contract between the parties.

166.     Defendants did not act with fair dealing under the contract.

167.     Due to the non-performance of Defendants to act fair dealing in the contract, Defendants have breached their covenant to Plaintiff.

COMPLAINT - 19

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

168.    As a result of that breach, Plaintiff has been damaged in an amount to be proved at trial.

## CLAIM THREE
## BREACH OF CONTRACT

169.    Plaintiff hereby repeats and realleges paragraphs 1 – 166 as though fully set forth herein.

170.    Paragraph 12 of the Participant Agreement provides that Plaintiff "understand[s] and acknowledge[s] that [she is] solely responsible for determining whether [she is] physically and mentally able to participate in the Series."

171.    When Plaintiff determined that she was too injured to participate as a result of the crash, Defendants breached their duty to accept Plaintiff's determination and, instead, demanded and required Plaintiff to continue filming the episode.

172.    Due to Defendants' refusals to accept Plaintiff's determination, Defendants breached their duty to Plaintiff under the contract.

173.    As a result of that breach, Plaintiff has been damaged in an amount to be determined at trial.

## CLAIM FOUR
## BREACH OF CONTRACT

174.    Plaintiff hereby repeats and realleges paragraphs 1 – 171 as though fully set forth herein.

175.    Paragraph 6 of the Participant Agreement provides, "Producer will not use the Footage and Materials to fictionalize an event."

176.    Defendants used the Footage and Materials from the crash and thereafter to fictionalize that Plaintiff was able to and did drive a snow machine from the situs of the crash back to Kavik River Camp.

COMPLAINT - 20

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

177. In fact, Plaintiff was driven by a crew member back to Kavik River Camp as a passenger on a snow machine.

178. This representation minimizes the appearance of the severity of Plaintiff's injuries and thereby places her in a false light.

179. In doing so, Defendants breached the Participant Agreement.

180. Plaintiff was damaged thereby in an amount to be proved at trial.

## CLAIM FIVE
## INTERFERENCE WITH BUSINESS RELATIONSHIPS

181. Plaintiff hereby repeats and realleges paragraphs 1 – 178 as though fully set forth herein.

182. Plaintiff had existing contractual relationships or business expectancies with third parties for the benefit of Plaintiff.

183. Plaintiff informed Defendants of these relationships or expectancies and Defendant knew of these relationships or expectancies.

184. On at least one occasion, Defendants interjected themselves in the business relationship or expectancy.

185. Defendants interjected themselves in the relationship or expectancy for the purpose of requiring Plaintiff to make herself wholly available for filming episodes in the series.

186. Due Defendants' interference in the business relationship or business expectancy, Defendants interference resulted in the termination of many of those relationship or expectancies.

187. As a result of Defendants' interference with the relationships or expectancies, Plaintiff's relationship and expectancies have been disrupted and Plaintiff was injured and thereby damaged in an amount to be determined at trial.

COMPLAINT - 21

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

## CLAIM SIX
## TRESPASS TO CHATTELS

188.     Plaintiff hereby repeats and realleges paragraphs 1 – 185 as though fully set forth herein.

189.     At all times relevant hereto, Plaintiff had the absolute right to possession of her pet and companion, Lil Bawb.

190.     Defendants asserted dominion over and control of Lil Bawb during an OTF filming session.

191.     In furtherance of that dominion and control, and without notification to Plaintiff, Defendants secreted and locked Lil Bawb, without protection, in a trailer that was below zero in temperature and life-threatening to Lil Bawb.

192.     Defendants intended to so secret and lock Lil Bawb into the life-threatening condition without notification to Plaintiff and in interference with Plaintiff's right of possession of Lil Bawb.

193.     Plaintiff did not know of the interference until she heard Lil Bawb creating a ruckus as a result of his

194.     But for Defendants' interference with Plaintiff's right of possession of Lil Bawb, Plaintiff would not have suffered the loss.

195.     As a result of Defendants' interference, Plaintiff was injured and thereby damaged in an amount to be proved at trial.

## CLAIM SEVEN
## FALSE IMPRISONMENT

196.     Plaintiff hereby repeats and realleges paragraphs 1 – 193 as though fully set forth herein.

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1    197.    After Plaintiff suffered her substantial injuries in the crash, Plaintiff

2    informed Defendants that she was injured and needed to receive emergent medical

3    attention.

4    198.    Defendants refused to summon life-lift or air taxi to the situs of the crash.

5    199.    Either life-lift or air taxi could have landed at the situs of the crash and

6    removed the critically-injured Plaintiff to medical facilities to receive emergent care.

7    200.    Instead, Defendants forced Plaintiff to remain at the situs of the crash and

8    demanded that she perform acts that could be filmed to further Defendants' desire to

9    capitalize on Plaintiff's injuries and misfortune.

10    201.    Defendants further required Plaintiff to return to Kavik River Camp, clad in

11    a bare minimum of clothing, on the back of a snow machine, thereby compounding her

12    pain and injuries.

13    202.    Defendants intended to confine Plaintiff to the crash situs and to the snow

14    machine.

15    203.    Defendants failed to provide a means of escape to Plaintiff.

16    204.    As a result of Defendants' commissions and omissions, Plaintiff was injured

17    and thereby damaged in an amount to be proved at trial.

18
19    **CLAIM EIGHT**
       **OUTRAGE**

20    205.    Plaintiff hereby repeats and realleges paragraphs 1 – 202 as though fully set

21    forth herein.

22    206.    In the time leading up to the crash, Defendants made numerous and

23    continuing demands of Plaintiff that she perform acts that were dangerous and life-

24    threatening.

25

26
COMPLAINT - 23

**CarpeLaw PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

207.   The life-threatening acts that Defendants demanded of Plaintiff were acts that Alaskans refused to perform in normal circumstances.

208.   Plaintiff, too, protested to Defendants that the acts demanded by Defendants were dangerous and life-threatening.

209.   Defendants ignored Plaintiff's protestations and, nevertheless, abusively demanded that Plaintiff perform the acts notwithstanding her protestations and the inherent danger.

210.   In making their demands, Defendants misused the authority vested in them by the terms of the Participant Agreement.

211.   Plaintiff was the only object of Defendants' actions.

212.   As a result of Defendants' actions, Plaintiff was injured and thereby damaged in an amount to be proved at trial.

**CLAIM NINE**
**NEGLIGENCE**

213.   Plaintiff hereby repeats and realleges paragraphs 1 – 210 as though fully set forth herein.

214.   At all times in their direction of Plaintiff and Plaintiff's performances under the Participant Agreement, Defendants had a duty to conform their actions and directions to that standard of conduct for the protection of Plaintiff against an unreasonable risk of injury.

215.   In compelling Plaintiff to perform under the contract in manners that subjected Plaintiff to unreasonable risks of injury, Defendants breached that duty owed to Plaintiff.

216.   The breach of that duty by Defendants resulted in injuries to Plaintiff in the form of being hit by metal tent components resulting from high winds, and in the form of

COMPLAINT - 24

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

extensive, serious, and personally debilitating permanent injuries resulting from the crash of the snow machine.

217.    But for Defendants' compulsion of Plaintiff to perform in the manner commanded by Defendants, Plaintiff would not have suffered the injuries she sustained.

218.    As a result of the injuries sustained by Plaintiff, she was damaged in an amount to be proved at trial.

**CLAIM TEN**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

219.    Plaintiff hereby repeats and realleges paragraphs 1 – 216 as though fully set forth herein.

220.    Over Plaintiff's objections and cautions, Defendants nevertheless commanded and compelled Plaintiff to engage in activities that were life-threatening.

221.    In so commanding and compelling, Defendants acted intentionally or with reckless disregard to the dangers and Plaintiff's protestations.

222.    Because the acts commanded and compelled by Defendants were life-threatening and Defendants had been warned or otherwise knew the actions were life-threatening or otherwise dangerous, Defendants' conduct was extreme and outrageous.

223.    Defendants' conduct was the cause of Plaintiff's injuries and the severe emotional distress suffered by Plaintiff.

224.    As a result, Plaintiff was damaged in an amount to be proved at trial.

**CLAIM ELEVEN**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

225.    Plaintiff hereby repeats and realleges paragraphs 1 – 222 as though fully set forth herein.

226.    Plaintiff commanded and compelled Plaintiff to engage in activities that were life-threatening.

COMPLAINT - 25

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1    227.    In so commanding and compelling, Defendants acted with negligent

2    disregard to the dangers to Plaintiff.

3    228.    Plaintiff has been previously attacked by a wild bear and suffered serious

4    injuries as a result.

5    229.    As a result to the permanent physical injuries Plaintiff sustained by Plaintiff

6    from the crash, Plaintiff is no longer able to confidently defend herself from life-

7    threatening dangers inherent in the locus of her residence.

8    230.    As a result of that distress, she experiences severe emotional apprehension

9    of death or life-threatening injuries that she could readily sustain by being attacked by apex

10   predators.

11   231.    Defendants had a duty to conduct themselves in a manner that would avoid

12   foreseeable harm to Plaintiff.

13   232.    Defendants breached that duty.

14   233.    The injuries sustained by Plaintiff as a result of Defendants' commanding

15   and compelling her to perform dangerous and life-threatening acts were foreseeable by

16   Defendants and reasonable persons.

17   234.    As a result of Plaintiff's emotional distress, Plaintiff is damaged in an

18   amount to be proved at trial.

**CLAIM TWELVE**
**PARTICIPANT AGREEMENT CONTAINS UNCONSIONABLE TERMS**

21   235.    Plaintiff hereby repeats and realleges paragraphs 1 – 232 as though fully set

22   forth herein.

23   236.    Paragraph 10 of the Participant Agreement reads:

24   **10. RELEASE OF CLAIMS.** I hereby agree on behalf of myself, and to
     the extent I have the full right to do so, my heirs, next of kin, spouse,

25   guardians and legal representatives (collectively, the "Releasing Parties"),
     that I and the other Releasing Parties do hereby unconditionally and

26

COMPLAINT - 26

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

irrevocably release and forever discharge Producer and Network, any sponsor of the Series or any other person or entity involved in the development, production, distribution or other exploitation of the Series or any derivative work thereof, and their respective affiliates, licensees, successors and assigns (collectively, the "Released Parties") from and against any and all claims, demands, actions, suits, costs, attorneys' fees, damages, judgments, orders and liabilities of whatever kind or nature (collectively, the "Claims") directly or indirectly related to or arising from my participation in the Series and Producer's and/or Network's use of the Footage and Material pursuant to this Agreement, including, without limitation, any claims for any injury, illness, death, damage, loss or harm to me or my property, libel, slander, defamation, false light, invasion of privacy, right of publicity or personality, misappropriation, intentional infliction of emotional distress, negligent infliction of emotional distress and false imprisonment. I and the other Releasing Parties hereby unconditionally and irrevocably agree that neither I nor the other Releasing Parties will sue or make any claim against any of the Released Parties with respect to any Claim released herein, except for Producer's breach of this Agreement.

237. The language in paragraph 10 was drafted solely by Defendants and without input from Plaintiff.

238. The language in paragraph 10 was represented to be "standard" language for releases in the television show industry.

239. The language in paragraph 10 is solely beneficial to Defendants and purports to relieve Defendants of any and all liability that might arise from their acts, whether negligent or intentional.

240. Paragraph 11 of the Participant Agreement reads:

11. ASSUMPTION OF RISKS. I acknowledge that my participation in the Series may involve hazardous activities and situations (including, but not limited to, traveling in off terrain vehicles, small planes, or watercrafts; consuming exotic and/or raw foods; being filmed or traveling during harsh and unpredictable weather conditions; enduring long periods of isolation with other participants and Producer's crew; encountering wild animals; and using firearms or being in close proximity to someone using firearms). As a result of my participation in such activities, I acknowledge that I may suffer serious injuries, which could result in my death. Nevertheless, I am voluntarily participating in these activities with knowledge of the danger involved and I assume all risks of personal injury (including death) to

**CarpeLaw PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

myself associate with my participation in the Series. I assume responsibility for obtaining all desired and/or required insurance coverage for myself. I agree that I will not bring or be a party to any legal action or claim against any Released Party. In addition, I acknowledge that there is a possibility that subsequent to the execution of this Agreement, I may discover facts or incur or suffer claims which were unknown or unsuspected at the time this Agreement was executed, and which if known by me at that time may have materially affected my decision to execute this Agreement. I acknowledge and agree that by reason of this Agreement, and the releases contained in the preceding paragraphs, I am assuming any risk of such unknown facts and such unknown and unsuspected claims

241.    The language in paragraph 11 was drafted solely by Defendants and without input from Plaintiff.

242.    The language in paragraph 11 was represented to be "standard" language for releases in the television show industry.

243.    The language in paragraph 11 is solely beneficial to Defendants and purports to relieve Defendants of any and all liability that might arise from their acts, whether negligent or intentional, where those acts put Plaintiff at risk.

244.    Prior to entering into the contractual relationship with Defendants, Plaintiff was wholly inexperienced in matters of the nature of the subject matter of the Participant Agreement.

245.    When entering into the Participant Agreement, Plaintiff was represented neither by counsel nor by an agent experienced in these matters.

246.    Language in a contract that removes liability from a party for intentional wrongs is contrary to public policy and is unconscionable.

### V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

COMPLAINT - 28

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1.        That the Court finds that Defendants breached the implied covenant of good faith in the Participant Agreement and award Plaintiff damages as proved thereon as alleged in Claim One.

2.        That the Court finds that Defendants breached the implied covenant of fair dealing in the Participant Agreement and award Plaintiff damages as proved thereon as alleged in Claim Two.

3.        That the Court finds that the Defendants breached paragraph 12 of the Participant Agreement vesting in Plaintiff the absolute right to determine if she is physically and mentally able to participate in the Series and award Plaintiff damages as proved thereon in Claim Three.

4.        That the Court finds that the Defendants breached that portion of paragraph 6 of the Participant Agreement prohibiting Defendants from fictionalizing an event and award Plaintiff damages as proved thereon in Claim Four.

5.        That the Court finds that Defendants interjected themselves into Plaintiff's actual and prospective business relationships and expectancies solely for the benefit of Defendants and award Plaintiff damages as proved thereon in Claim Five.

6.        That the Court finds that Defendants committed trespass to chattels with respect to Plaintiff's companion and pet, Lil Bawb, and award Plaintiff damages as proved thereon in Claim Six.

7.        That the Court finds that Defendants falsely imprisoned Plaintiff and failed to provide to her a means of escape and award Plaintiff damages as proved thereon in Claim Seven.

8.        That the Court finds that Defendants misused the authority vested in them by the Participant Agreement and that their misuse and demands constituted outrage and award Plaintiff damages as proved thereon in Claim Eight.

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

9.     That the Court finds that Defendants had a duty to conform their actions and directions to that standard of conduct for the protection of Plaintiff against an unreasonable risk of injury, that they breached that duty, and award Plaintiff damages as proved thereon in Claim Nine.

10.     That the Court finds that Defendants intentionally inflicted emotional distress upon Plaintiff and award Plaintiff damages as proved thereon in Claim Ten.

11.     That the Court finds that Defendants negligently inflicted emotional distress upon Plaintiff and award Plaintiff damages as proved thereon in Claim Eleven.

12.     That the Court finds that paragraphs 11 and 12 of the Participant Agreement are unconscionable and against public policy and strikes them from the Agreement and award Plaintiff damages as proved thereon in Claim Twelve.

13.     That the Court grant to Plaintiff Susan Aikens such other and additional relief as is just and proper.


## VI.  JURY DEMAND

Plaintiff respectfully demands a jury trial.

//

//

//

//

//

//

//

//

COMPLAINT - 30

CarpeLaw PLLC
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

Case 3:17-cv-00032-SLG   Document 1   Filed 02/17/17   Page 30 of 32

1     Dated this 17th day of February 2017.

2                                      Respectfully submitted,

3                                      STEVEN M. WELLS

4                                     *s/ Steven M. Wells*

5                                     Steven M. Wells, AKBA #0010066
                                    Attorney for Plaintiff

6                                     431 W 7th Ave Ste 107
                                    Anchorage, AK 99501

7                                     Telephone: (907) 279-3557
                                    Facsimile: (907) 279-3558

8                                     Email: steve@stevenmwellslaw.com

9

10                                     CARPELAW PLLC

11                                     *s/ Robert S. Apgood*
                                    Robert S. Apgood, WSBA #31023

12                                     Attorney for Plaintiff
                                    *Pro Hac Vice*

13                                     CARPELAW PLLC
                                    5202 223rd St SE

14                                     Bothell, WA 98021-8075
                                    Telephone: (206) 624-2379

15                                     Facsimile: (206) 535-2930
                                    Email: rob@carpelaw.com

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 31

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)

1    Dated this 17th day of February 2017.

2                                              Respectfully submitted,

3                                              STEVEN M. WELLS

4

5                                              _s/ Steven M. Wells_
                                               Steven M. Wells, AKBA #0010066
6                                              Attorney for Plaintiff
                                               431 W 7th Ave Ste 107
7                                              Anchorage, AK 99501
                                               Telephone: (907) 279-3557
8                                              Facsimile: (907) 279-3558
                                               Email: steve@stevenmwellslaw.com
9

10                                             CARPELAW PLLC

11                                             _s/ Robert S. Apgood_
                                               Robert S. Apgood, WSBA #31023
12                                             Attorney for Plaintiff
                                               _Pro Hac Vice_
13                                             CARPELAW PLLC
                                               5202 223rd St SE
14                                             Bothell, WA 98021-8075
                                               Telephone: (206) 624-2379
15                                             Facsimile: (206) 535-2930
                                               Email: rob@carpelaw.com
16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 30

**CARPELAW PLLC**
5202 223rd Street SE
Bothell, Washington 98021
(206) 624-2379 - (206) 535-2930 (fax)